UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIPCO, LLC,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Napco Security Technologies, Inc.<br><br>　　　　　　Defendant. | Case No.   19-2072<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

　　　　Plaintiff, SIPCO, LLC, by and through undersigned counsel, hereby brings suit against NAPCO SECURITY TECHNOLOGIES, INC. and alleges as follows:

### NATURE OF THE ACTION

　　　　1.　　This is a civil action for patent infringement of United States Patents Nos. 9,430,936 ('936 Patent), 7,978,059 ('059 Patent), 8,964,708 ('708 Patent), and 8,924,588 ('588 Patent) under the patent laws of the United States, including 35 U.S.C. §§271 and 281-285.

　　　　2.　　A copy of the '936 Patent is attached as Exhibit A; a copy of the '059 Patent is attached as Exhibit B; a copy of the '708 Patent is attached as Exhibit C; a copy of the '588 Patent is attached as Exhibit D.

### PARTIES

　　　　3.　　Plaintiff SIPCO, LLC ("SIPCO") is a limited liability company organized and existing under the laws of the State of Georgia and maintains its principal place of business at 20638 Duxbury Terrace, Ashburn, Virginia, 20147.

　　　　4.　　Defendant Napco Security Technologies, Inc. ("Napco") is organized and existing under the laws of the State of Delaware, with its principal place of business at 333 Bayview Ave., Amityville, NY 11701.

537374.1

## JURISDICTION AND VENUE

5. Pursuant to 28 U.S.C. §§ 1331 and 1338(a), this Court has original jurisdiction over the subject matter of this action because this is an action arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et. seq.*

6. This court has personal jurisdiction over Napco because infringing activity alleged herein took place in the State of New York.  Further, the exercise of personal jurisdiction comports with Due Process under the United States Constitution.

7. Pursuant to 28 U.S.C. §§ 1391 and 1400(b), venue is proper in this district.

## GENERAL ALLEGATIONS

### SIPCO

8. SIPCO is a small research, development and technology company based in Atlanta, Georgia.  T. David Petite was its founding member.

9. In the 1990s, through his own individual research and development efforts, Mr. Petite invented a large number of wireless control and distribution technology applications.  The inventions resulting from Mr. Petite's efforts include, but are not limited to, various ways of moving data as economically and seamlessly as possible over both wired and wireless networks.

10. Through the 1990s and early 2000s investors contributed tens of millions of dollars for technology development and implementation of networks.  Clients included Georgia Power, Alabama Power, Newnan Utilities GA, Johnson Controls, Synovus Bank, and Grand Court Lifestyles residential living facilities.

11. After proving that the technology worked in the field, several companies competed to purchase an exclusive license to Mr. Petite's technology for the market known as "smart grid." Landis+Gyr (http://www.landisgyr.com/) (previously Siemens Metering) took an exclusive license

to the smart grid technology in 2002 and in 2005 purchased rights to the technology for utility applications for $30,000,000. Mr. Petite's technology has been deployed in millions of meters deployed across North America and throughout the world.

12. SIPCO retained the rights to the mesh network patents, and for use of the technology outside of the utility space. It still maintains ownership of the software, firmware, hardware and patent portfolio that resulted from Mr. Petite's research and development efforts.

13. SIPCO's patent portfolios (of which the patents in suit are a part) include inventions that are widely recognized as pioneering in various fields of use. As a result, more than 100 corporations have taken licenses to them. Licensees include companies operating in the vertical markets of Industrial Controls, Smart Grid, Building Automation, Network Backhaul, Home Appliance, Home Automation and Entertainment, Sensor Monitoring, and Internet Service Provisioning. Licensed products include products using standard wireless mesh protocols such as WirelessHART, ZigBee, IEEE 802.15.4, Thread, 6LoWPAN, and Z-Wave, as well as proprietary wireless protocols such as that marketed by Enocean.

14. SIPCO is the exclusive owner of all rights, title, and interest in the patents in suit, including the right to exclude others and to enforce, sue and recover damages for past and future infringement thereof.

## DEFENDANT NAPCO SECURITY TECHNOLOGIES, INC.

15. Napco was formed in 1969. It was formerly known as Napco Security Systems, Inc.

16. Napco manufactures and sells security products and software worldwide. The company offers access control systems, door security products, intrusion and fire alarm systems, and video surveillance systems for commercial, residential, institutional, industrial, and government applications.

17. Napco markets and sells products primarily to independent distributors, dealers, and installers of security equipment.

18. Napco advertises that its access control systems include various types of identification readers, control panels, PC-based computers, and electronically activated door-locking devices. Napco advertises that its alarm systems include automatic communicators, cellular communication devices, control panels, combination control panels/digital communicators and digital keypad systems, fire alarm control panels, and area detectors.

19. More specifically, the Napco StarLink Connect Dual Path Communicator with Built-In Z-Wave Hub and the Napco iBridge Z-Remote Z-Wave Controller and Z-Wave compatible remote devices are configured to operate pursuant to the Z-Wave standard wireless mesh protocol.

20. Napco trades on the NASDAQ stock exchange under the ticker symbol NSSC. Napco has annual gross revenue of more than $90 million.

## DEFENDANT'S KNOWLEDGE OF PLAINTIFF'S PATENTS

21. Napco has been aware SIPCO's patents since at least October 2013 when a SIPCO licensing representative sent a letter dated October 1, 2013 to Mr. Richard Soloway, Napco's

Chairman, CEO and President, regarding SIPCO's Wireless Mesh Patent Portfolio of inventions and Napco's infringement. The letter invited Napco to discuss entering into a licensing agreement.

22. SIPCO followed up with additional correspondence in November 2013 to Mr. Soloway and to Michael Carrieri, Napco's Senior Vice President of Engineering Development. SIPCO again wrote Mr. Soloway and Mr. Carrieri regarding the patent portfolio in June 2016, and August 2016 and provided claim charts to Napco in October 2016. In June 2017, SIPCO sent an additional correspondence Michelle Silverman, an executive assistant at Napco.

23. Napco received the correspondence and accompanying materials but did not respond, did not assert any defenses, and did not make any attempt to obtain a license to the patents in suit or other patents in SIPCO's portfolio and, instead, continued to knowingly infringe the patents in suit.

24. There have been no review proceedings relating to the patents asserted in this complaint.

**COUNT I: DIRECT AND INDIRECT INFRINGEMENT OF THE '936 PATENT**

25. Plaintiff hereby restates the allegations contained in the preceding paragraphs above as if fully set forth herein.

26. Plaintiff is the owner by assignment of the '936 Patent, "Systems And Methods For Monitoring And Controlling Remote Devices." The '936 Patent was duly and legally issued on August 30, 2016.

27. Independent Claim 1 of the '936 Patent states:

In a communication system to communicate command and sensed data between remote devices, the system comprising:

a first transceiver configured to send a data packet, the data packet comprising a transceiver address of a remote wireless device, a command indicator comprising a command code, and a data value comprising a message;

> a controller associated with the remote wireless device comprising a second transceiver and configured to receive the data packet via the second transceiver and perform a particular function corresponding to the command code;
>
> at least one sensor associated with the second transceiver to detect a condition and output a data signal to the second transceiver; and
>
> at least one actuator associated with the second transceiver to activate a device.

*See* Exhibit A, Col. 14, lines 35 –52.

28.     Defendant has been and now is infringing at least Claim 1 of the '936 Patent by making, having had made, using, offering for sale, and selling networked wireless cellular security system products that operate pursuant to the Z-Wave standard wireless mesh protocol.

29.     A claim chart attached as Exhibit E explains how Defendant has directly infringed Claim 1 of the '936 Patent.

30.     Defendant has been and now is indirectly infringing as a contributory infringer under 35 U.S.C. § 271 at least Claim 1 of the '936 Patent by making, having had made, using, offering for sale, and selling networked wireless cellular security system products that operate pursuant to the Z-Wave standard wireless mesh protocol, wherein the products that operate pursuant to the are a component of a patented system, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

31.     Defendant's acts of infringement have caused damage to Plaintiff.  Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts.

## COUNT II: DIRECT AND INDIRECT INFRINGEMENT OF THE '059 PATENT

32. Plaintiff hereby restates the allegations contained in the preceding paragraphs above as if fully set forth herein.

33. Plaintiff is the owner by assignment of the '059 Patent, "System And Method For Monitoring And Controlling Remote Devices." The '059 Patent was duly and legally issued on July 12, 2011.

34. Independent Claim 7 of the '059 Patent states:

A method for collecting information, providing data services, and controlling remote systems, comprising the steps of:

adaptively configuring at least one transmitter electrically interfaced with a sensor and an actuator wherein the transmitter generates an information signal consisting of a transmitter identification code and an information field,

wherein the information signal is received by another nearby transmitter electrically interfaced with one or both of a sensor and an actuator and repeated in the same signal type as received to additional transmitters each electrically interfaced with one or both of a sensor and an actuator for communicating the information signal to a gateway, the gateway providing access to a WAN;

translating the information signal within the gateway into a WAN compatible data transfer protocol;

transferring the information signal via the WAN to a computer wherein the computer is configured to manipulate and store data provided in the information signal; and

granting the client access to the computer.

*See* Exhibit B, Col. 19, lines 20 – 40.

35. Defendant has been and now is directly infringing at least Claim 7 of the '059 Patent by making, having had made, using, offering for sale, and selling networked wireless cellular security system products that operate pursuant to the Z-Wave standard wireless mesh protocol.

36. A claim chart, attached as Exhibit F, explains how Defendant directly infringed, and is infringing, Claim 7 of the '059 Patent.

37. Defendant has been and now is indirectly infringing as a contributory infringer under 35 U.S.C. § 271 at least Claim 7 of the '059 Patent by making, having had made, using, offering for sale, and selling networked wireless cellular security system products that operate pursuant to the Z-Wave standard wireless mesh protocol, wherein the products that operate pursuant to the Z-Wave standard wireless mesh protocol are a component of a patented system, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

38. Defendant's acts of infringement have caused and continue to cause damage to Plaintiff. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts.

**COUNT III: DIRECT AND INDIRECT INFRINGEMENT OF THE '708 PATENT**

39. Plaintiff hereby restates the allegations contained in the preceding paragraphs above as if fully set forth herein.

40. Plaintiff is the owner by assignment of the '708 Patent, "Systems And Methods For Monitoring And Controlling Remote Devices." The '708 Patent was duly and legally issued on Feb. 24, 2015.

41. Independent Claim 1 of the '708 Patent states:

A wireless communication device for use in a wireless communication system configured to communicate command and sensed data within the wireless communication systems, the wireless communication device comprising:

a transceiver configured to send and receive wireless communications;

> and a controller configured to communicate with at least one other remote wireless device via the transceiver with a preformatted message, the controller further configured to format a message comprising a receiver address comprising an address of at least one remote wireless device; a command indicator comprising a command code; a data value comprising a message, wherein the controller is configured to receive a preformatted message from another wireless communication device, and based on a command code provided in the preformatted message, implement a certain function corresponding to the command code.

*See* Exhibit C, Col. 14, lines 6 - 23.

42. Defendant has been and now is directly infringing at least Claim 1 of the '708 Patent by making, having had made, using, offering for sale, and selling networked wireless cellular security system products that operate pursuant to the Z-Wave standard wireless mesh protocol.

43. A claim chart attached as Exhibit G explains how Defendant directly infringed, and is infringing, Claim 1 of the '708 Patent.

44. Defendant has been and now is indirectly infringing as a contributory infringer under 35 U.S.C. § 271 at least Claim 1 of the '708 Patent by making, having had made, using, offering for sale, and selling networked wireless cellular security system products that operate pursuant to the Z-Wave standard wireless mesh protocol, wherein products that operate pursuant to the Z-Wave standard wireless mesh protocol are a component of a patented system, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

45. Defendant's acts of infringement have caused and continue to cause damage to Plaintiff. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts.

## COUNT IV: DIRECT AND INDIRECT INFRINGEMENT OF THE '588 PATENT

46. Plaintiff hereby restates the allegations contained in the preceding paragraphs above as if fully set forth herein.

47. Plaintiff is the owner by assignment of the '588 Patent, "Systems And Methods For Controlling Communication Between A Host Computer And Communication Devices." The '588 Patent was duly and legally issued on Dec. 30, 2014.

48. Independent Claim 1 of the '588 Patent states:

A site controller comprising:

a processor; and

a memory containing instructions that, when executed by the processor, cause the site controller to:

receive the original data messages and repeated data messages originating at a first remote device via a first wireless transceiver associated with the first remote device, said first wireless transceiver being part of a wireless communication network comprising a plurality of wireless transceivers associated with a plurality of remote devices, the original data messages comprising a unique identifier of the first wireless transceiver and a sensor data signal from the first remote device, the repeated data messages comprising a unique identifier of a second wireless transceiver in the wireless communication network and a sensor data signal from a second remote device associated with the second wireless transceiver;

identify remote devices in the plurality of remote devices associated with the sensor data signals of the received original data messages and repeated data messages;
provide information related to the sensor data signals to a wide area network for access by a first host computer;

and

determine and store upstream and downstream paths for one or more of the plurality of remote devices in the wireless communication network.

*See* Exhibit D, Col. 18, lines 24 - 53.

49. Defendant has been and now is directly infringing at least Claim 1 of the '588 Patent by making, having had made, using, offering for sale, and selling networked wireless cellular security system products that operate pursuant to the Z-Wave standard wireless mesh protocol.

50. A claim chart attached as Exhibit H explains how Defendant directly infringed, and is infringing, Claim 1 of the '588 Patent.

51. Defendant has been and now is indirectly infringing as a contributory infringer under 35 U.S.C. § 271 at least Claim 1 of the '588 Patent by making, having had made, using, offering for sale, and selling networked wireless cellular security system products that operate pursuant to the Z-Wave standard wireless mesh protocol, wherein products that operate pursuant to the Z-Wave standard wireless mesh protocol are a component of a patented system, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

52. Defendant's acts of infringement have caused and continue to cause damage to Plaintiff. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the Court:

A. Enter a judgment in favor of Plaintiff that Defendant has directly and indirectly infringed Patents 9,430,936, 7,978,059, 8,964,708, and 8,924,588.

B. Enter a judgment and order requiring Defendant to pay Plaintiff its damages, costs, expenses, prejudgment and post-judgment interest, and post-judgment royalties for Defendant's

infringement of Patents 9,430,936, 7,978,059, 8,964,708, and 8,924,588 pursuant to 35 U.S.C. § 284;

      C.      Enter a judgment and order holding that Defendant's infringement was willful, and award treble damages and attorney fees and expenses;

      D.      Enter judgment that this is an exceptional case, and, thus, award attorney fees and expenses to Plaintiff; and

      E.      Award such other and further relief as the Court deems just and proper.

## JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: April 10, 2019

*s/ Thomas J. McKenna*
Thomas J. McKenna
**GAINEY MCKENNA & EGLESTON**
440 Park Avenue South, 5th Floor
New York, NY 10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
tjmckenna@gme-law.com

Gregory J. Myers, MN #0287398
Stephanie A. Chen, MN #0400032
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
gjmyers@locklaw.com
sachen@locklaw.com

*Attorneys for Plaintiff Sipco, LLC*